# SARGENT *v.* VETTER.

# VETTER *v.* SARGENT.

PATENTS; INTERFERENCE; DILIGENCE.

1. The application of the rule of diligence depends, more or less, upon the circumstances of each case, the character of the invention, and the skill of the inventor and his ability to develop and commercialize it, being considered; and persistent efforts to exploit an invention will not be discouraged by a too strict application of the rule requiring diligence.

2. Where the senior party to an interference involving an improvement in sockets for incandescent electric lamps made drawings in September, 1912, of a device answering the counts of the issue, and from that time until April, 1913, devoted his whole time and energy in devising means to exploit his invention, after which he reduced it to practice and put a device corresponding to the issue on the market during 1913, it was *held,* that he was not lacking in diligence in reducing the invention to practice, even though it would have cost but a few dollars to have had a device embodying the invention made.

Nos. 1210 and 1212. Patent Appeals. Submitted March 11, 1919. Decided March 31, 1919.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed* as to count 1, *affirmed* as to counts 2 and 3.

The facts are stated in the opinion.

*Mr. A. G. Davis, Mr. J. F. Bartlett, Mr. W. W. Ammen,* and *Mr. S. O. Edmonds* for Sargent et al.

*Mr. Frederick W. Winter* for Vetter.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

These appeals are from the decision of the Commissioner of Patents in an interference proceeding.

Howard R. Sargent and Theodore A. Koch filed their application for patent on January 27, 1914. Clarence A. Vetter filed July 31, 1913, and renewed January 7, 1915, on which patent issued October 19, 1915.

The invention relates to sockets for incandescent electric lamps in which the metal sleeve into which the lamp is screwed may be freely rotated in the opposite direction, so that the lamp cannot be unscrewed from the receiving socket. The object of the invention is to prevent the theft of lamps. Before the lamp can be removed, a key is inserted "through the outer shell to engage directly with the periphery of an insulating member on the rotatable socket." The invention is defined in the following counts:

"1. In an incandescent lamp socket, the combination of a shell, an insulating body whereof a part is stationary in the shell and a part rotatable with the lamp, means for holding said latter part against rotation, and a barrier arranged to prevent said holding means from engaging said rotatable part.

"2. In an incandescent lamp socket, the combination of a shell provided with a keyway, of a body of insulating material in said shell and stationary therein, of an insulating disk rotatable relative to said insulating body and with the lamp and located immediately adjacent said insulating body and provided on its periphery with a key engaging part which is removed from the lamp receiving threaded metal sleeve, and a key adapted to be inserted through said keyway to engage only said insulating disk.

"3. In an incandescent lamp socket, the combination of a shell provided with a keyway, of an insulating body stationary in said shell, an insulating disk located directly adjacent said insulating body and rotatable thereon and with the lamp and projecting peripherally beyond the lamp receiving threaded metal sleeve and provided with a key engaging part, and a key adapted to be inserted through the keyway in the shell and engage only said insulating disk."

The Examiner of Interferences and the Board of Examiners in Chief awarded priority as to all the counts to Vetter. The

Commissioner affirmed the Board as to counts 2 and 3, and reversed it as to count 1; hence, the cross appeals.

The earliest date claimed by Sargent and Koch is their alleged date of conception,—October, 1912; while Vetter alleges reduction to practice in August of that year. We agree with the tribunals below, that the evidence conclusively establishes the making of a socket by Vetter in September, 1912, which amounted to a reduction to practice of the invention described in counts 2 and 3. Counts 2 and 3 do not include the "barrier" defined in count 1, but only call for a keyway and key which may be inserted in such manner as to engage the insulating disk. That Vetter had a socket answering these conditions and drawings of a device meeting the requirements of count 1 as early as September, 1912, is settled by reliable testimony beyond reasonable controversy.

The contention of Sargent and Koch that any device, such as a toothpick, nail, or wire, can be inserted through the hole of Vetter's 1912 socket and hold it from rotating, is completely answered by the tribunals below by reference to prior patents which demonstrate that it is old to lock a rotating socket with a key inserted through the shell. Sargent patent No. 954,823; Kempien patent No. 1,032,362. The novelty here consists in the key engaging the periphery of the insulator, as provided in count 2, the insulator projecting peripherally beyond the lamp receiving threaded metal sleeve, as defined in count 3.

This brings us to a more difficult question,—the diligence of Vetter as to the invention defined in count 1. Unquestionably, Vetter had disclosed the invention of count 1 before Sargent and Koch entered the field, but he does not claim to have reduced it to practice. It was on the ground of lack of diligence that the Commissioner refused to award priority as to this count to Vetter.

It appears, briefly, that, during the period from September, 1912, to April, 1913, Vetter was engaged in an effort to interest parties to take up his invention in order to raise additional capital. He was connected, at this time, with the Penn Auto Specialty Company, and offered his invention to it; but it was

apparently in financial straits, since it went into bankruptcy in November, 1912. Vetter then started out to organize a new company, but met with difficulty in interesting persons with capital until he finally succeeded in forming the Best Electric Company in April, 1913. Following the organization of that company, Vetter immediately began preparations for commercial manufacture, and had lamps on the market during that year. We think that, for a man in Vetter's circumstances, the time occupied in exploiting his invention was not unreasonably long. It is not a case of an inventor laying his invention aside to look after other business; for Vetter, according to the testimony, did nothing else. He devoted his whole time and energy in devising means to put his invention on the market.

The application of the rule of diligence depends, more or less, upon the circumstances in each case; and it is for the court, in each instance, to draw the inferences from the testimony upon which to base its conclusions. What would be held to constitute lack of diligence in one case may be excused in another. Much depends upon the character of the invention, the skill of the inventor, and his ability to develop and commercialize it. True, as suggested by the Commissioner, "in the present case it admittedly would have cost but a few dollars to have had a device embodying the invention made, but this was not done." Undoubtedly, that would have been the safe course to pursue; but Vetter seems, by his conduct, to have been oblivious of any danger in delay, since he was moving forward from day to day in constant expectancy that his object would immediately be achieved. Persistent efforts of this sort are not to be discouraged by a too strict application of the rule.

The decision of the Commissioner of Patents is reversed as to count 1 and affirmed as to counts 2 and 3, and the clerk is directed to certify these proceedings as by law required. *Reversed as to count 1, and affirmed as to counts 2 and 3.*